# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

**KIMBERLY DIANE JONES,**

     **Plaintiff,**

**vs.**                               **Case No. 4:18cv503-CAS**

**NANCY A. BERRYHILL, Acting
Commissioner of Social Security,**

     **Defendant.**
_____/

## MEMORANDUM OPINION AND ORDER

This is a Social Security case referred to the undersigned United States Magistrate Judge upon consent of the parties by United States District Judge Robert L. Hinkle. ECF No. 10. It is now before the Court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Commissioner of the Social Security Administration denying Plaintiff's applications for a period of disability and Disability Insurance Benefits (DIB) under Title II of the Social Security Act (Act) and Supplemental Security Income (SSI) under Title XVI of the Act. After careful consideration of the record, the decision of the Commissioner is affirmed.

## I. Procedural History and Facts

On February 26, 2016, Plaintiff filed an application with the Social Security Administration for a period of disability and Disability Insurance Benefits pursuant to Title II of the Social Security Act.  Tr. 206-07.[1]  On that same date she also filed an application for Supplemental Security Income (SSI) pursuant to Title XVI of the Social Security Act.  Tr. 208-14.  She alleged disability beginning May 1, 2015, based on degenerative disc disease, high blood pressure, gout, knee problems, and shoulder problems.  Tr. 79.  The claims were denied initially on May 24, 2016, and upon reconsideration on August 3, 2016.  Tr. 78-95, 98-119, 122-23.

Petitioner requested a hearing and a hearing was held on August 22, 2017, before Administrative Law Judge (ALJ) Janet McCamley.  Tr. 37-77.  Plaintiff appeared with counsel and testified, and impartial vocational expert William "Earl" Thompson testified by telephone.  On December 7, 2017, a decision was issued finding Plaintiff was not disabled.  Tr. 11-18.  The Appeals Council denied review on August 31, 2018.  Tr. 1-3, 301.

On November 1, 2018, Plaintiff, appearing through counsel, filed a complaint for judicial review pursuant to 42 U.S.C. §§ 1381, *et seq.,* and 42

---

[1] Citations to the transcript/administrative record (ECF No. 12) shall be by the symbol "Tr." followed by a page number that appears in the lower right corner of each page.

U.S.C. § 405(g). *See* ECF No. 1. Respondent filed an answer on March 22, 2019, ECF No. 11, and both parties filed memoranda in support of their positions, which have been considered. ECF Nos. 15, 16.

## A. The Hearing

At the hearing held August 22, 2017, before ALJ McCamley, Plaintiff's counsel stated that the medically determinable severe impairments were osteoarthritis of the right knee, lower left extremity gout, and obesity. Tr. 40-41. Plaintiff testified that she weighs 264 pounds and is 5' 5"" tall. Tr. 42. She testified that she was a certified nursing assistant and had worked in 2013 to 2015 more as a companion. Tr. 43-44. She assisted her client with taking him to appointments, various daily activities, and assisting him into and out of the bathtub. Tr. 45. If he fell, she would assist him in getting up. *Id.* She did not do any heavy lifting. Tr. 46. After her client died in 2015, she had three months of unemployment benefits but tried during that time to find another job. Tr. 47. She testified her knee and suspected gout started getting worse. Tr. 46. She saw a doctor in August 2015 but did not have complaints until she sought treatment in October of 2015. Her gout was diagnosed in April 2016. Tr. 47-48.

Plaintiff reported to consultative examiner Dr. Wayne Sampson in May 2016 that she was "bone on bone" in her knee, although her knee had

not yet been X-rayed.  Tr. 48.  She testified that she had earlier seen

Dr. Kessler, whom she believed was an orthopedic physician, at Lincoln

Neighborhood Medical Center about her knee and he told her that her knee

was "bone on bone."  Tr. 49, 50.  She testified that she was later seen at

Tallahassee Orthopedic Clinic through a vocational rehabilitation service in

February of 2017.  Tr. 49.

Plaintiff testified that her son lives near her and she helped take care

of his children ages 4, 6, and 7 during the summer of 2017.  Tr. 53.  Her

son was not paying her regularly, but would help her pay some of her bills.

Tr. 54.  She said she is living in a place owned by her sister and does not

pay rent.  *Id.*

When asked about her emergency department visit in June 2017

seeking medication for foot pain, Plaintiff testified that she told the nurse

that she was due to have upcoming knee surgery because her orthopedic

doctor had told her he would do the surgery, although she agreed he had

told her in March 2017 that he could not do it unless she lost 25 to 40

pounds.  Tr. 55-56.

Plaintiff testified that she cannot do her former work as companion

because her pain is worse now than it was.  Tr. 59.  She said she could not

walk around the mall, although she testified she tries to walk for exercise.

Tr. 60.  She said she could stand and walk about two hours in an eight-hour day.  *Id.*  Plaintiff testified that her companion job was very active and she sat for only about 2 to 2.5 hours  a day.  Tr. 73.  She said her gout flares up sometimes two or three times a month and sometimes only once a month for several days at a time.  Tr. 61-62.  When it was mentioned that she did not complain of the gout to TOC when she visited in February 2017, she said it was because it had gotten worse in the past three to four months.  Tr. 62.  She testified she went to the Tallahassee Memorial emergency center three times with foot pain, although record (Tr. 444) shows only a June 2017 visit.  Tr. 63.  When asked about how much weight she thought she could lift, she testified she might be able to lift 20 pounds.  Tr. 65.  She said she cannot sit for more than 45 minutes without having to stand up to relieve pain and stiffness in her knee.  *Id.*

Plaintiff testified that she can attend her personal needs, shower, cook, shop, do laundry, go to church, drive, and babysit grandchildren unless she has a bad gout flare up, which can last several days at a time. When she has a bad flare up she cannot put weight on her foot and must stay in bed, which had occurred about three times in the past three months. She cannot do yard work or gardening.  Tr. 67-69.

The impartial vocational expert, William "Earl" Thompson testified that based on the testimony presented, Plaintiff has worked in the past as a companion, which is listed as light, semi-skilled work, SVP 3, DOT code 309.677-010; nurse attendant, which is listed as medium level, performed at heavy level, semi-skilled, SVP of 4, DOT code 355.674-014; and caretaker, listed at medium level, SVP of 2, DOT code 301.687-010.[2]  Tr. 71-72.  He testified that the caretaker job allows the person to sit and stand throughout the day depending on the task at hand.  Tr. 72.  The vocational expert was presented with the following hypothetical question: Assuming an individual of Plaintiff's age, education, and past work experience, who is limited to performing light work activity, no climbing ladders, ropes, and scaffolding, occasional climbing of ramps and stairs, frequent balancing, occasional stooping and crouching, less than occasional kneeling or

---

[2] DOT refers to the Dictionary of Occupational Titles (4th Ed., Rev. 1991), which is one of the examples of sources that the ALJ may rely on for job information.  *See* SSR 00-4p; 20 C.F.R. § 404.1566(d).  The ALJ may also rely on a vocational expert or other specialist.  *See* § 404.1566(e).  "[SVP] is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." Dictionary of Occupational Titles (DOT) (4th ed., rev. 1991), Appendix C: Components of the Definition Trailer, § II, Specific Vocational Preparation (SVP), 1991 WL 688702. An SVP of 2 allows for "[s]hort demonstration only;" SVP of 3 allows for preparation time of "[o]ver 1 month up to and including 3 months;" SVP of 4 allows for "over 3 months up to and including 6 months."  *Id.*  Semi-skilled work is work that needs some skills but does not require doing the more complex work duties.  20 C.F.R. § 404.1568(b). "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."  20 C.F.R. § 404.1568(a).

crawling, can that person perform any of the past work that Plaintiff performed? Tr. 74-75. The vocational expert testified that the person could perform the past work of companion, as performed and as per the DOT. Tr. 75.

A second hypothetical was presented, assuming all factors stated in the first hypothetical, except standing and walking is limited to a total of four hours in an eight-hour day, could the person perform any of the past work that Plaintiff performed? Tr. 75-76. The vocational expert testified that the person could not perform the past work. Tr. 76. The vocational expert was not asked about any other jobs that could be performed pursuant to the second hypothetical question.

## B. The Decision of the Administrative Law Judge

In the decision issued on December 7, 2017, the ALJ made findings pertinent to this review. Tr. 12-17. Plaintiff, age 57, met the insured status requirements through December 31, 2017, and has not engaged in substantial gainful activity since May 1, 2015, the alleged onset date. Tr. 12, 14. Based on the evidence of record, the ALJ found Plaintiff had the severe impairments of osteoarthritis of the right knee and obesity. *Id.* The

ALJ found Plaintiff's hypertension, shoulder problems, and gout to be non-severe and only minimally affecting Plaintiff's ability to work. Tr. 13.

The ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1. *Id.* The ALJ noted that no acceptable medical source mentioned a finding equivalent to a listed impairment individually or in combination, and Plaintiff's attorney representative did not contend Plaintiff's impairments met any listing. *Id.*

The ALJ assessed Plaintiff's residual functional capacity (RFC) and found she could perform light work with certain limitations.[3] The ALJ concluded that Plaintiff cannot climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs, stoop, and crouch; may frequently balance; and may infrequently (less than occasionally) kneel and crawl.

---

[3] Residual functional capacity is the most a claimant can still do despite limitations. 20 C.F.R. § 404.1545(a)(1). It is an assessment based upon all of the relevant evidence including the claimant's description of his or her limitations, observations by treating and examining physicians or other persons, and medical records. *Id.* The responsibility for determining claimant's RFC lies with the ALJ. 20 C.F.R. § 404.1546(c); *see* Social Security Ruling (SSR) 96-5p, 1996 SSR LEXIS 2, at *12 (July 2, 1996) (rescinded eff. Mar. 27, 2017) ("The term '*residual functional capacity assessment*' describes an adjudicator's finding about the ability of an individual to perform work-related activities. The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence.").

Tr. 13. In reaching this RFC determination, the ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to produce her alleged symptoms, as described in Plaintiff's testimony at the hearing, but her statements concerning the intensity, persistence, and limiting effect of the symptoms are not entirely consistent with the medical and other evidence in the record. Tr. 14.

The ALJ cited treatment records from an April 16, 2014, visit to the Neighborhood Medical Center that documented complaints of foot pain and right knee pain, with effusion, joint swelling/edema, bony abnormality, and joint tenderness. She was diagnosed with knee pain, hypertension, and morbid obesity. Tr. 15 (citing records at Tr. 326). The ALJ cited records from October 2014 documenting continued complaints of knee pain and a request for an orthopedic referral, but November 2014 records from the Neighborhood Medical Center showed no complaints and a normal physical exam. Tr. 15 (citing records at Tr. 328-33).

The ALJ noted that Plaintiff continued to visit the Neighborhood Medical Center throughout 2015 for various symptoms not related to right knee pain, and in August 2015 had no complaints. Tr. 15 (citing records at Tr. 334-49).

The ALJ cited records from January 2016 in which Plaintiff complained of knee pain and foot pain, although her physical examination was noted as normal. She was diagnosed with hypertension, uterine bleeding, and obesity. She was prescribed Ibuprofen and Neurontin for body pain. Tr. 15 (citing records at Tr. 350-52). The ALJ noted that complaints of gout and knee pain continued in April 2016, and Plaintiff was diagnosed with gout, anemia, and hyperlipidemia. Medications were prescribed. Tr. 15 (citing records at Tr. 466-67).

The ALJ noted that in February 2017, Plaintiff was seen by Dr. Garrison Rolle at the Tallahassee Orthopedic Clinic (TOC) for right knee pain reported as 8/10. A physical examination showed tenderness and X-rays showed advancing arthritis and significant lateral compartment wear. Plaintiff received an injection in her right knee. Tr. 15 (citing records at Tr. 376-78). The ALJ noted that Plaintiff saw Dr. Rolle at TOC in March 2017 and was advised that she was not a good candidate for total knee arthroplasty because of her obesity (BMI of 47.5) and was advised to lose weight. She was prescribed a brace, which was difficult to wear, and conservative treatment of exercise, ice, and NSAIDs as needed. Tr. 15 (citing records at Tr. 379-81). The ALJ cited TOC records from June 2017 in which Plaintiff reported no progress in weight loss and in which Dr. Rolle

noted discussing further weight loss efforts and a referral to pain management.  Dr. Rolle released Plaintiff to resume "normal activities." The ALJ concluded that the notes did not indicate any disabling conditions. Tr. 16 (citing records at 454-55).

Also in June 2017, Plaintiff visited the Tallahassee Memorial emergency center for right foot pain.  The ALJ noted that her physical examination was overall normal and joints unremarkable.  She was diagnosed with foot pain and tendonitis.  Tr. 16 (citing records at Tr. 443-52).

The ALJ considered the opinion evidence of Wayne Sampson, M.D., who provided a consultative examination of Plaintiff in May 2016 for the Office of Disability Determinations.  At that time, Plaintiff reported progressive right knee pain over the past five years, left shoulder pain, and gout in her right foot.  Tr. 16 (citing records at Tr. 369-74).  The ALJ noted that the records showed normal gait, ability to stand and walk on heels and toes, rise from a seated position without difficulty, and no shoulder pain on range of motion.  The notes indicated that Plaintiff had mild bony hypertrophy and soft tissue swelling in her right knee but no heat, significant laxity, or pain on range of motion.  Dr. Sampson diagnosed Plaintiff with osteoarthritis of the right knee, gout in the right foot, and left

shoulder pain with numbness in the upper left extremity. *Id.* The ALJ stated, "His assessment, however, did not contain any opinion regarding functional limitations, so I have not considered it for that purpose." Tr. 16.

The ALJ gave little weight to the opinion of Johnny B. Craig, M.D., a State agency medical consultant, who completed a physical residual functional capacity assessment at the reconsideration level. Tr. 16 (citing records at Tr. 100-19). The ALJ concluded, without specifics, that Dr. Craig's opinion that Plaintiff could perform medium work activity with postural limitations was not consistent with the evidence of record. Tr. 16. The ALJ concluded in the RFC assessment that Plaintiff was capable of light work with limitations discussed above. The ALJ noted Plaintiff's obesity, as evidenced by her weight in March of 2016 of 275 pounds (BMI of 44.38), her weight in March 2017 of 281 pounds (BMI of 47.5), and her weight at the time of the hearing in August of 2017 of 264 pounds, and concluded that her obesity, singly and in combination with other impairments, limits Plaintiff to the RFC found in the decision. Tr. 14, 15, 16.

Based on the RFC determination, and considering Plaintiff's impairments, her RFC with stated limitations, her age, education, and physical and mental demands of the job of companion as generally and

actually performed, the ALJ concluded Plaintiff could perform her past work as a companion, which is semi-skilled, light exertional level work with an SVP of 3.  Tr. 17.

Based on these findings, the ALJ found that Plaintiff has not been under a disability as defined in the Social Security Act from May 1, 2015, through the date of the decision, and was not entitled to disability insurance benefits or supplement security income.  Tr. 17-18.

## II. Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles.  42 U.S.C. § 405(g); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); accord Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).  "The Commissioner's factual findings are conclusive if supported by substantial evidence."  Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002)

(citations omitted).[4] The Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner, Bloodsworth, 703 F.2d at 1239, although the Court must scrutinize the entire record, consider evidence detracting from the evidence on which the Commissioner relied, and determine the reasonableness of the factual findings. Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992); Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986). Review is deferential, but the reviewing court conducts what has been referred to as "an independent review of the record." Flynn v. Heckler, 768 F.2d 1273, 1273 (11th Cir. 1985).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national

---

[4] "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted). "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ. A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983). "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.' " Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

economy." 42 U.S.C. § 423(d)(2)(A). A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 404.1509 (duration requirement).[5] Both the "impairment" and the "inability" must be expected to last not less than 12 months. Barnhart v. Walton, 535 U.S. 212 (2002). An individual is entitled to disability insurance benefits if he or she is under a disability prior to the expiration of his insured status. *See* 42 U.S.C. § 423(a)(1)(A); Moore, 405 F.3d at 1211; Torres v. Sec'y of Health & Human Servs., 845 F.2d 1136, 1137-38 (1st Cir. 1988); Cruz Rivera v. Sec'y of Health & Human Servs., 818 F.2d 96, 97 (1st Cir. 1986).

Pursuant to 20 C.F.R. § 404.1520(a)(4)(i)-(v), the Commissioner analyzes a claim in five steps. Under the first step, the claimant has the burden to show that she is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At the second step, the claimant must show she has a severe impairment. 20 C.F.R. § 404.1520(a)(4)(ii).

---

[5] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI, but separate, parallel statutes and regulations exist for DIB and SSI claims (*see* 20 C.F.R. §§ 404, 416). Therefore, citations herein should be considered to refer to the appropriate parallel provision. The same applies to citations of statutes or regulations found in quoted court decisions.

Step two is a threshold inquiry, and the ALJ does not go on to step three if the claimant fails to meet step two, but will find claimant is "not disabled." McDaniel v. Bowen, 800 F.2d 1026, 1032 (11th Cir. 1986); 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the claimant must show that her severe impairment or combination of impairments meets or equals the criteria in the Listings of Impairments. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant cannot meet or equal one of the listings, the ALJ considers at step four whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work. § 404.1520(a)(4)(iv). If the claimant establishes she cannot perform her past relevant work, the burden shifts to the Commissioner at step five to show that significant numbers of jobs exist in the national economy that the claimant can perform in light of her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(d), (g); Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004); Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999); McMahon v. Comm'r, Soc. Admin., 583 F. App'x 886, 887 (11th Cir. 2014) (unpublished). If the Commissioner carries this burden, the claimant must prove that she cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

Plaintiff bears the burden of proving that she is disabled and, consequently, is responsible for producing evidence in support of her claim. *See* 20 C.F.R. § 404.1512(a); Moore, 405 F.3d at 1211. The responsibility of weighing the medical evidence and resolving any conflicts in the record rests with the ALJ. *See* Battle v. Astrue, 243 F. App'x 514, 523 (11th Cir. 2007) (unpublished). An opinion of the claimant's treating physician must be accorded considerable weight by the Commissioner unless good cause is shown to the contrary. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); 20 C.F.R. § 404.1527(c)(2).[6] "This requires a relationship of both duration and frequency." Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003). "The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053. (11th Cir. 1986).

The ALJ may discount the treating physician's opinion if good cause exists to do so. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986). Good cause may be found when the opinion is "not bolstered by the

---

[6] This provision applies to claims filed before March 27, 2017. *See* 20 C.F.R. § 404.1527, "Evaluating opinion evidence for claims filed before March 27, 2017." For claims filed after that date, the applicable provision is 20 C.F.R. § 404.1520c, titled "How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017."

evidence," the evidence "supported a contrary finding," the opinion is
"conclusory or inconsistent with [the treating physician's] own medical
records," the statement "contains no [supporting] clinical data or
information," the opinion "is unsubstantiated by any clinical or laboratory
findings," or the opinion "is not accompanied by objective medical evidence
or is wholly conclusory." Lewis, 125 F.3d at 1440; Edwards v. Sullivan, 937
F.2d 580, 583-84 (11th Cir. 1991) (citing Schnorr v. Bowen, 816 F.2d 578,
582 (11th Cir. 1987)). Where a treating physician has merely made
conclusory statements, the ALJ may afford them such weight to the extent
they are supported by clinical or laboratory findings and are consistent with
other evidence as to a claimant's impairments. Wheeler v. Heckler, 784
F.2d 1073, 1075 (11th Cir. 1986). The reasons for giving little weight to the
opinion of the treating physician must be supported by substantial
evidence, Marbury v. Sullivan, 957 F.2d 837, 841 (11th Cir. 1992), and
must be clearly articulated. Phillips, 357 F.3d at 1241.

Opinions on issues such as whether the claimant is unable to work,
the claimant's RFC, and the application of vocational factors, "are not
medical opinions, . . . but are, instead, opinions on issues reserved to the
Commissioner because they are administrative findings that are dispositive
of the case; *i.e.*, that would direct the determination or decision of

disability." 20 C.F.R. § 404.1527(d); *see* <u>Bell v. Bowen</u>, 796 F.2d 1350, 1353-54 (11th Cir. 1986). Although a claimant may provide a statement containing a treating physician's opinion of his remaining capabilities, the ALJ must evaluate such a statement in light of the other evidence presented and the ALJ must make the ultimate determination of disability. *See* 20 C.F.R. §§ 404.1512, 404.1513, 404.1527, 404.1545.

## III. Analysis

Plaintiff's raises two challenges to the decision of the ALJ in this case: A. Whether the case was adjudicated by an unconstitutionally appointed ALJ and should be remanded for a new hearing before a different ALJ; and B. Whether the ALJ sufficiently developed the record with opinion and records evidence. ECF No. 15 at 1.

### A. Appointment of the Administrative Law Judge

Plaintiff contends that the case must be remanded for a new hearing because the ALJ who rendered the decision was "unconstitutionally appointed." ECF No. 15 at 13. Plaintiff cites <u>Lucia v. S.E.C.</u>, 138 S. Ct. 2044, 2051 (2018), which held that Administrative Law Judges for the Securities and Exchange Commission are "Officers of the United States," and are therefore subject to the Appointments Clause—and because they were not appointed by an entity identified in Article II, § 2, cl. 2, of the

United States Constitution,[7] the decision was "tainted with an appointments violation" and a new hearing was required. <u>Lucia</u>, 138 S. Ct. at 2055. In reaching this holding, the Supreme Court stated:

> This Court has held that "one who makes a <u>timely</u> challenge to the constitutional validity of the appointment of an officer who adjudicates his case" is entitled to relief. <u>Ryder v. United States</u>, 515 U.S. 177, 182-183 (1995). Lucia made just such a timely challenge: He contested the validity of Judge Elliot's appointment before the Commission, and continued pressing that claim in the Court of Appeals and this Court.

*Id.* (emphasis added). Assuming that a social security ALJ is an Officer of the United States subject to the Appointments Clause, this challenge to the decision on review is rejected. Plaintiff did not make a timely challenge to the constitutional validity of the appointment of the ALJ in this case. The Appointments Clause is "nonjurisdictional" and may be waived or forfeited by failure to timely raise it. <u>Freytag v. Comm'r</u>, 501 U.S. 868, 878-79 (1991) (cited in <u>Turner Bros., Inc. v. Conley</u>, 757 F. App'x 697, 699 (10th Cir. 2018)).

The record is not in dispute that Plaintiff did not raise this issue in the administrative proceedings below. The Eleventh Circuit has yet to decide this issue of whether failure to raise the Appointments Clause challenge in

---

[7] Article II, § 2, cl.2, U.S. Const., identifies those entities as the President, a court of law, or a head of department.

the administrative proceedings forfeits the claim, but there are two pending

appeals in the Eleventh Circuit involving this issue: Perez v. Berryhill, No.

18-20760-CV-TORRES, 2019 WL 1405642 (S.D. Fla. May 28, 2019),

*appeal filed sub nom* Perez v. Comm'r of Soc. Sec., No. 19-11660 (Apr. 29,

2019); and Lopez v. Berryhill, No. 18-20625-CV-TORRES, 2019 WL

1429632 (S.D. Fla. Mar. 29, 2019), *appeal filed sub nom* Lopez v. Acting

Comm'r of the Soc. Sec. Admin., No. 19-11747 (11th Cir. May 3, 2019).

These two cases, and other courts within this circuit, have interpreted the

Supreme Court's holding in Lucia to mean that, in the context of social

security disability proceedings, an Appointments Clause challenge must be

raised before the ALJ's decision becomes final at the administrative level.[8]

These cases agree with the "vast majority of courts that have considered

---

[8] *See, e.g.*, Valle-Roman v. Comm'r of Soc. Sec., No. 6:18-cv-1158-Orl-TBS, 2019 WL 1281171, at *2 (M.D. Fla. Mar. 20, 2019); Rodriquez v. Comm'r of Soc. Sec., No. 6:18-cv-1375-Orl-41GJK, 2019 WL 1644243 (M.D. Fla. Feb. 5, 2019), *report and recommendation adopted* 2019 WL 1643299 (M.D. Fla. Apr. 16, 2019); Gary v. Comm'r of Soc. Sec., No. 8:17cv2710-T-JSS, 2018 WL 7436496 (M.D. Fla. Nov. 30, 2018) (citing Stearns v. Berryhill, No. C17-2031-LTS, 2018 WL 4380984, at *5 (N.D. Iowa Sept. 14, 2018) and Page v. Comm'r Soc. Sec., 344 F. Supp. 3d 902, 905 (E.D. Mich. 2018)); Bowman v. Comm'r of Soc. Sec., No. 5:17-cv-580-Oc-18PRL, 2019 WL 1370639, at *2 (M.D. Fla. Feb. 11, 2019), *report and recommendation adopted* 2019 WL 1359741 (M.D. Fla. Mar. 26, 2019); Newbill v. Berryhill, No. CV 17-00410-B, 2019 WL 1407425, at *3 (S.D. Ala. Mar. 28, 2019); Abbington v. Berryhill, No. 1:17-00552-N, 2018 WL 6571208, at *9 (S.D. Ala. Dec. 13, 2018); Deirdre T. v. Comm'r, Soc. Sec. Admin., No. 1:17-cv-650-RGV, 2018 WL 7823090, at *20 (N.D. Ga. Sept. 28, 2018).

this issue" and have concluded the Appointments Clause issue is forfeited

if not raised in the administrative proceedings.[9]

Accordingly, in view of Plaintiff's failure to raise the Appointments

Clause challenge at any point during the administrative process or to show

---

[9] Bonilla-Bukhari, v. Berryhill, 357 F. Supp. 3d 341, 351 (S.D.N.Y. 2019) (collecting cases); *see also* Sprouse v. Berryhill, 363 F. Supp. 3d 543, 549 (D.N.J. 2019); Britt v. Berryhill, No.1:18cv-0030, 2018 WL 6268211, at *2 (W.D.N.C. Nov. 30, 2018); Hugues v. Berryhill, No. CV-17-3892-JPR, 2018 WL 3239835, at *2 n.2 (C.D. Cal. July 2, 2018); Faulkner v. Commissioner of Social Security, No. 1:17-cv-01197-STA-egb, 2018 WL 6059403, at *2-3 (W.D. Tenn. Nov. 19, 2018); Thurman v. Comm'r of Soc. Sec., No. 17-CV-35-LRR, 2018 WL 4300504, at *9 (N.D. Iowa Sept. 10, 2018), *appeal filed* No. 18-3451 (11th Cir. Nov. 19, 2018); Meadows v. Berryhill, No. 7:18-cv-17-BO, 2019 WL 938880, at *2, (E.D.N.C. Feb. 25, 2019); Karl K. v. Comm'r of Soc. Sec., No. 2:17-CV-0304-JTR, 2018 WL 4339381, at *2 n.2 (E.D. Wash. Sept. 11, 2018); Trejo v. Berryhill, No. EDCV 17-0879-JPR, 2018 WL 3602380, at *3 n.3 (C.D. Cal. July 25, 2018); Faulkner v. Commissioner of Social Security, No. 1:17-cv-01197-STA-egb, 2018 WL 6059403, at *2 (W.D. Tenn. Nov. 19, 2018).

"[A] small, but growing minority of cases, mainly from Pennsylvania, have rejected this restrictive interpretation of Lucia, concluding that an Appointments Clause challenge cannot be waived by failing to raise it at the administrative level (collectively, the 'Pennsylvania Decisions'). These cases highlight the SSA's 'less rigid' and informal administrative review process." Marchant on behalf of A.A.H. v. Berryhill, No. CV 18-0345, 2019 WL 2268982, at *4, *8 (E.D. Pa. May 28, 2019) (sustaining Berryhill's objections and rejecting Report and Recommendation that found the Appointments Clause claim was not forfeited by failure to raise in administrative proceedings). *See also* Muhammad v. Berryhill, No. 18-172, 2019 WL 2248694, at *6 (E.D. Pa. May 23, 2019) (rejecting magistrate report that concluded claimant was not required to raise Appointments Clause challenge in the initial administrative level of review).

In support of her Appointments Clause argument, ECF No. 15 at 15-16, Plaintiff cites Bizarre v. Berryhill, No. 1:18cv48, 2019 WL 1014194 (M.D. Pa. Mar. 4, 2019), *appeal filed* No. 19-1773 (3d Cir. April 17, 2019); Bradshaw v. Berryhill, 372 F. Supp. 3d 349 (E.D.N.C. 2019), *appeal filed* No. 19-1531 (4th Cir. May 17, 2019); and Culclashure v. Comm'r of Soc. Sec. Admin., No. 18-1543, 2019 WL 1641192 (E.D. Pa. Apr. 16, 2019), *disagreed with by* Marchant on behalf of A.A.H. v. Berryhill, No. CV 18-0345, 2019 WL 2268982, at *4 (E.D. Pa. May 28, 2019).

good cause for her failure to do so, the Court finds that Plaintiff has

forfeited her Appointments Clause challenge.[10]

## B.  Development of the Record

Plaintiff contends that the ALJ failed to sufficiently develop the record

with opinion evidence.  ECF No. 15 at 8.  She points out that the ALJ

appropriately afforded little weight to the opinion of the State agency

medical consultant who reviewed the medical records and concluded that

Plaintiff could do medium level work.  She also points out that the ALJ

noted that the report of consultative examiner Dr. Sampson did not contain

any opinion regarding functional limitations and was therefore not

considered for that purpose.  *Id.*  Plaintiff argues that these two

circumstances result in the ALJ's opinion as to RFC being "unguided by

any professional, medical opinion."  *Id.*  Plaintiff further argues that an ALJ

---

[10] Plaintiff also cites Sims v. Apfel, 530 U.S. 103, 112 (2000), and argues that claims do not need to be exhausted in social security proceedings in order to raise them on review.  ECF No. 15 at 15.  However, post-Sims cases have found that although Sims held that a Plaintiff need not exhaust an issue before the Appeals Council, the Court "specifically left open the question of whether an issue is waived if it is not raised in the administrative hearing."  *See* Kepple v. Massanari, 268 F.3d 513, 517 (7th Cir. 2001) (citing statement in Sims that "[w]hether a claimant must exhaust issues before the ALJ is not before us.").  *See also* Maloney v. Comm'r of Soc. Sec., 480 F. App'x 804, 810 (6th Cir. 2012) (unpublished) (holding claimant waived argument that was not presented to ALJ or the Appeals Council).  The Supreme Court in Lucia required an Appointments Clause challenge to be "timely" raised, which was done in that case by presenting it to the Securities and Exchange Commission.  138 S. Ct. at 2055.  It is of note that 20 C.F.R. § 404.940 requires that any request to disqualify the ALJ must be made to the ALJ at the "earliest opportunity" and, if not resolved, then the objection concerning the ALJ is to be presented to the Appeals Council.

is not qualified to interpret raw medical data or "even complete medical records" in functional terms because, she contends, raw data and medical records are insufficient alone to fulfill the ALJ's duty to develop the record. *Id.* at 10.  Plaintiff contends that the ALJ should have referred Plaintiff to her treating sources for a medical opinion as to her functional limitations caused by her gout flare ups.  ECF No. 15 at 11.

Plaintiff also argues that "the record appears incomplete per hearing testimony" because the ALJ noted several times that the evidence did not explain how frequent Plaintiff's gout symptoms occurred independent of her subjective testimony.  ECF No. 15 at 11.  Plaintiff further argues that even though there are references in the record to a vocational rehabilitation service, no inquiry was made into possible records from the rehabilitation staff or those professionals to whom she was referred by the rehabilitation service.  ECF No. 15 at 12.  Plaintiff, however, does not contend that the ALJ erred when she found Plaintiff's gout to be a non-severe impairment.

Plaintiff testified at the hearing that she has gout flare ups two or three times a month.  Tr. 62.  She reported to Dr. Sampson that she experiences flare ups about every two months.  Although Plaintiff testified that she visited the emergency center two or three times for gout, and the record contained only one emergency center record, the ALJ was not

required to seek out additional medical records for additional visits to the
emergency center. The medical record shows that Plaintiff visited the
Neighborhood Medical Center beginning April 16, 2014, and then on
October 14, 2014; November 25, 2014; January 27, 2015; June 25, 2015;
July 9, 2015; July 21, 2015; August 4, 2015; October 27, 2015; January 19,
2016; March 17, 2016; and April 19, 2016. Tr. 326-367. In all those visits,
she complained of foot pain only on April 16, 2014 (Tr. 326), and then
again almost two years later on January 19, 2016, when she reported she
may have gout. Tr. 350. When her gout was diagnosed on April 19, 2016,
she was prescribed medication (allopurinol). Tr. 366.

The ALJ noted that after Plaintiff's gout diagnosis, she next
complained of right foot pain over a year later in June 2017, when Plaintiff
complained of foot pain in her visit to TOC on June 6, 2017, and in her
hospital visit on June 9, 2017. Tr. 15-16 (citing records at Tr. 444, 454).
Although notes from Plaintiff's visit to TOC on February 2, 2017, state that
she had a history of gout, Plaintiff did not complain about her gout in that
visit. Tr. 376. In the June 9, 2017, emergency center visit, Plaintiff
reported pain at the base of the first metatarsal and Achilles tendon on the
right foot that she said had begun four weeks earlier. Tr. 444. A "risk
factor" of gout was noted. *Id.* Plaintiff reported that the foot pain episodes

were "occasional."  *Id.*  She was diagnosed with foot pain and tendonitis.
Tr. 447.

Records of testing for Plaintiff's gout show that her uric acid level on
June 9, 2017, was 7.1 mg/dl, down from 9.1 mg/dl on April 19, 2016, when
her gout was diagnosed.  Tr. 447, 366.  On July 18, 2017, Plaintiff was
seen at the Neighborhood Medical Center for medication refills and was
given a prescription for allopurinol and colchicine, both for her gout.
Tr. 458, 460.  These longitudinal medical records did not provide
substantial evidence to conclude that Plaintiff was disabled by gout as of
May 1, 2015, or thereafter.  Rather, they provide substantial evidence
supporting the ALJ's conclusion that Plaintiff's gout was a non-severe
impairment that did not significantly impair her ability to work.[11]

Plaintiff has the burden of providing medical records to substantiate
her claim that her gout was a disabling condition.  *See, e.g.*, Ellison v.
Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) (holding that the ALJ has a
basic duty to develop a full and fair record, but "the claimant bears the
burden of providing that [s]he is disabled, and, consequently, [s]he is

---

[11] Substantial evidence also supports the ALJ's finding that Plaintiff's
hypertension and shoulder problems are non-severe.  Plaintiff reported that her
hypertension was controlled on medication.  *See* Tr. 41, 303, 376.  The ALJ also
correctly noted that there was little reference to her alleged shoulder problems in the
medical record.  Tr. 41.

responsible for producing evidence in support of his claim.").  In addition,

where, as here, the ALJ concludes Plaintiff can perform her previous work,

the burden is on Plaintiff to prove she cannot do so.  Lucas v. Sullivan, 918

F.2d 1567, 1571 (11th Cir. 2016); Rivera-Cruzada v. Comm'r of Soc. Sec.,

741 F. App'x 737, 740 (11th Cir. 2018) (unpublished).  If there existed other

emergency center records that showed Plaintiff complained of gout pain on

one or two other occasions, she has not provided them and has not

demonstrated that the absence of them creates evidentiary gaps in the

medical record that rendered the proceeding unfair or the decision

uninformed.  Nor has she demonstrated that any prejudice flowed from the

ALJ's failure to seek more medical records.  See Graham v. Apfel, 129

F.3d 1420, 1432 (11th Cir. 1997) (holding that claimant must demonstrate

that alleged evidentiary gaps in the record resulted in prejudice to warrant a

remand to the Secretary).  In the present case, the ALJ had before her

ample medical records and evidence that Plaintiff had complained of foot

pain on several occasions and that Plaintiff reported the pain occurred

occasionally up to every month or two months.

Further, Plaintiff has not shown that the ALJ was required to seek a

medical opinion to guide her in arriving at the appropriate RFC.  Plaintiff

was referred for a consultative examination and was examined by

Dr. Sampson on May 9, 2016.  Tr. 369-74.  While it is correct that he did

not render an express opinion on any functional limitations created by

Plaintiff's impairments, his office notes set forth his findings concerning her

physical status.  Dr. Sampson noted that Plaintiff reported long term pain in

her right knee, pain he left shoulder, and gout affecting her right foot.

Tr. 369.  She reported pain worsening during weight bearing activities and

that she avoids stooping and squatting.  *Id.*  Dr. Sampson found that

Plaintiff had a normal gait and was able to stand and walk on her heels and

toes.  Tr. 370.  She could rise from a seated position without difficulty and

could get on and off the exam table without difficulty.  Tr. 371.  Knee flexion

was recorded as 150 degrees.  Tr. at 373.  Dr. Sampson found no

deformity, tenderness or pain with range of motion in her shoulders.

Plaintiff had a negative straight leg raise supine and sitting.  Tr. 371.  He

diagnosed Plaintiff with osteoarthritis of the right knee, gout in her right foot,

and left shoulder pain.  *Id.*  The ALJ considered Dr. Sampson's findings

along with Plaintiff's longitudinal medical record, which was consistent with

his findings.  Notes from Plaintiff's three 2017 visits to TOC, which occurred

after Dr. Sampson's 2016 examination, state that Plaintiff is a vocational

rehabilitation patient.  Tr. 376.  Thus, the ALJ was aware that Plaintiff was

referred by the rehabilitation service to TOC.  Plaintiff has not provided any

basis to conclude that records from the vocational rehabilitation service were necessary, or even helpful, for the ALJ's determination of Plaintiff's severe impairments or her RFC.

Plaintiff does not argue that the ALJ erred in evaluating evidence concerning the osteoarthritis of her knee, and the record contains substantial evidence supporting the ALJ's determination of the RFC relative to Plaintiff's severe impairment of her knee.  In the February 2017 visit to TOC, Plaintiff complained about her right knee pain.  *Id.*  A right knee inspection revealed no atrophy, ecchymosis or swelling, although a mild varus deformity was present.  Tr. 377.  She had medial and lateral joint line tenderness and significant medial and lateral patella facet tenderness.  *Id.* Her range of motion was 0/0/110 degrees with strength testing 5/5 in all muscle groups tested.  Her gait was antalgic favoring the right.  *Id.*  X-rays of her knee showed advancing arthritis and significant lateral compartment wear.  *Id.*  Plaintiff was given a steroid injection and was released to resume normal activities.  Tr. 378.

In her May 2017 visit to TOC, Plaintiff returned for a follow-up of her knee complaint and no discussion occurred relative to gout.  Tr. 379.  In that visit, her right knee range of motion was 0/0/110 degrees with limited flexion due to the girth of her legs.  Tr. 380.  She could perform a straight

leg raise and ligamentous examination was stable.  She had no effusion.
*Id.*  Plaintiff's treatment plan was essentially conservative—to begin weight
loss "so that she will be medically optimized if this procedure [total knee
arthroplasty] is necessary in the future."  *Id.*  She was provided a brace and
advised to continue home exercises and NSAIDs and ice as needed.  *Id.*
In her June 6, 2017, visit to TOC for a follow-up knee evaluation shortly
before the hearing in this case, examination of the right knee disclosed
tenderness and trace effusion.  Her range of motion was 0/0/120 degrees
and her ligament exam was stable.  She was released to resume normal
activities with a recommendation for a pain management consult.  Tr. 454-
55.  A "right probable bunion deformity" was noted.  Tr. 455.

The ALJ had for review all the medical records from TOC, where
Plaintiff was referred by the vocational rehabilitation provider.  Plaintiff has
not demonstrated that other referral records from the rehabilitation provider
were necessary in order for the ALJ to make an informed decision, and the
absence of those referral records does not render the medical record
incomplete.  The ALJ discussed the above records as well as the medical
records occurring prior to 2017, and concluded that the records supported
the RFC.  Based on review of the same records, the ALJ concluded that
Plaintiff's gout was not a severe impairment and did not "more than

minimally affect the Claimant's ability to perform work related activities."[12] Tr 13.

In reaching the RFC, the ALJ noted that Plaintiff's activities of daily living and her abilities also supported the RFC. Plaintiff testified at the August 22, 2017, hearing that she took care of her three grandchildren ages four, six, and seven during the summer of 2017 while her son was at work, including driving them around and taking them to the park. Tr. 53. She also testified that she can attend her personal needs, shower, cook, grocery shop at Winn-Dixie or Piggly Wiggly, do laundry, do light house cleaning, go to church at least twice a month, drive, and babysit grandchildren unless she has a bad gout flare up. Tr. 67-69.

Although there is no medical opinion expressly concerning Plaintiff's functional limitations, the ALJ is charged with evaluating many factors in reaching the RFC, including the medical evidence. *See* 20 C.F.R. § 404.1545(a)(3). There is no requirement that the ALJ's RFC finding be based in every case on the medical opinion of a physician. The RFC assessment must be based on all the relevant evidence in the record, such as medical history; medical signs and laboratory findings; the effects of

---

[12] The ALJ is not required to identify all impairments that should be considered severe. *See* Heatly v. Comm'r of Soc. Sec., 382 F. App'x 823, 825 (11th Cir. 2010) (unpublished); *see also* Mariarz v. Sec'y of Health and Human Servs, 837 F.2d 240, 244 (6th Cir. 1987). Plaintiff does not claim that the ALJ omitted a severe impairment.

treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication); reports of daily activities; lay evidence; recorded observations; medical source statements; effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment, and work evaluations, if available. *See* Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8p (S.S.A. July 2, 1996), 1996 WL 374184, at *5.

It was appropriate for the ALJ to consider the longitudinal medical record and the findings contained therein in formulating the RFC. Such consideration is not an improper interpretation of raw data as the physician's notes made clear the examination findings and results of tests performed. Nor did the ALJ rely on a subjective interpretation of medical records to contradict any medical opinion that Plaintiff had more limitations that the ALJ found in the RFC. The ALJ "has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision." Castle v. Colvin, 557 F. App'x 849, 853 (11th Cir.

2014) (unpublished) (quoting Ingram v. Comm'r of Soc. Sec. Admin., 496

F.3d 1253, 1269 (11th Cir. 2007)).

In the present case, the record was fully and sufficiently developed

with medical records from 2014 through June of 2017. Plaintiff was also

provided a consultative examination which, although it did not state an

express opinion on functionality, provided a report that sufficiently

described Plaintiff's conditions and the results of the examinations by

Dr. Sampson. Very relevant were the medical records from Plaintiff's

treating physician, Dr. Rolle of TOC, that occurred in close proximity to the

hearing. The ALJ appropriately considered the TOC office notes and

results of the examinations done by Dr. Rolle, and that consideration did

not amount to an improper evaluation of raw data in reaching the RFC.

It was not necessary for the ALJ to recontact Plaintiff's treating

physician or the consultative examiner because the evidence was sufficient

for the ALJ to determine whether Plaintiff was disabled. See 20 C.F.R.

§ 404.1520b(b)(2)(i) & (ii) (providing that if the agency concludes the

evidence is insufficient to make a disability determination or is inconsistent,

the agency may recontact the claimant's medical source or request

additional existing evidence). The ALJ in this case found the evidence

sufficient to determine the RFC and the issue of disability, and both the

RFC determination and the disability decision were based on substantial evidence in the record.

## IV. Conclusion

Considering the record as a whole, the decision of the Administrative Law Judge is supported by substantial evidence in the record and application of the proper legal standards.  Accordingly, the decision of the Commissioner to deny Plaintiff's application for a period of disability and disability benefits and for supplemental security benefits is **AFFIRMED.** The Clerk shall enter judgment for Defendant.

**IN CHAMBERS** at Tallahassee, Florida, on June 21, 2019.

**s/ Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**